## THE WABASH.

## THE DEFIANCE.

(District Court, E. D. New York. February 11, 1918.)

1. TOWAGE ⬦⟶11(5)—STRANDING OF TOW—EVIDENCE OF FAULT.
    That a tug, before the stranding of her tow, had been using long hawsers in inland waters in violation of the statute, does not prove faulty navigation in matters which could not be affected by the length of the tow.

2. TOWAGE ⬦⟶12(2)—STRANDING OF TOW—FAULT.
    A tug with three barges in tow, coming into New York Harbor, stopped in the Main Ship Channel to shorten the hawsers at a place which was unusual and at the time unsafe, because the tide created a side drift. The middle barge, which was of the greatest draft, had an apparatus for shortening her hawsers, which she proceeded to do, taking more time than was necessary. The tug, observing that the tide was setting the tow toward shallow water, signaled the barge to make fast, with the intention of towing ahead; but the barge paid no attention to the signal, and when it was repeated 10 minutes later she was aground and suffered injury. *Held*, that both vessels were in fault; the tug for not stopping in a safer place, and the barge for taking unnecessary time, and for not obeying the first signal.

In Admiralty. Suit by Thomas J. Scully, owner of the barge Wabash, against the P. Dougherty Company, owner of the tug Defiance. Decree dividing damages.

Macklin, Brown & Purdy, of New York City, for libelant.
Harrington, Bigham & Englar, of New York City, for respondent.

CHATFIELD, District Judge. This case arises from the grounding of a barge on the southerly side of Flynn's Knoll, between Red Buoys 8 and 10, on the northerly side of the Main Ship Channel in New York Harbor, on the 9th day of September, 1915. The barge, which was loaded with 1,635 tons of coal, had come from Hampton Roads, Va., on the way to Providence, R. I., in tow of a large oceangoing tug, the Defiance, owned by the respondents herein.

[1] It appears that the Defiance had agreed to tow the Wabash and another coal barge directly to Providence, going around outside of the easterly end of Long Island. The other barge was not ready, and the plan was changed with the consent of the Wabash. Thus the Defiance brought the Clara Brooks, loaded with railroad ties, and a third barge, the Arundel, loaded with piling, in addition to the Wabash, which was in the middle of the tow. The Brooks and the Arundel were coming to New York, and so the Defiance came in at Sandy Hook. Three days were consumed in coming from Hampton Roads. The weather was fine, but there appears to have been some ground swell from the east, and on the morning of the 9th the tow left the Scotland Lightship and proceeded through the Gedney Channel into the Main Channel, arriving opposite Flynn's Knoll about 8 a. m., when the flood tide had about ceased to run. The captain of the Defiance had not deemed it prudent to shorten his hawsers from the length used in ocean towing, while outside of Sandy Hook, because of the ground

⬦⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

swell. He thus violated the statute prohibiting the use of long hawsers in inland waters, and this is now assigned as one of the faults against the Defiance. He evidently shortened his hawsers at this point to comply with the statute, and also to avoid any additional towing out of his course.

[2] As has been repeatedly held, this court is not in this action engaged in prosecuting the captain for violation of the law, and such violation does not prove faulty navigation in matters which could not be affected by the length of the tow. In the case at bar, the captain of the Defiance knew that he would violate the law unless he shortened his hawsers, and hence proceeded to do so. But violation of the statute before the accident does not add to the responsibility for the accident in question. The sole issue as the case stands is whether the Defiance was negligent from the standpoint of navigation in shortening the long hawser, under the circumstances of the situation, at the precise point where this maneuver was attempted.

The libel charges fault on the part of the tug in attempting to take too large a tow with insufficient power, and in failing to keep the barge in the channel. No mention was made of the issue which has been tried until the testimony of the witnesses as to the action of the tide made it apparent that a side drift (due either to the last of the flood tide still setting to the northwest against Flynn's Knoll, or to the beginning of the ebb tide, which for a short time swings up from Sandy Hook Bay in the same direction, at this particular point) was the force which diverted the Wabash from her course and landed her on the bank, where she could not be extricated until the following day. In the meantime the Defiance proceeded to New York with the other two boats, and the Wabash was pounded on the shoal by the ground swell, so as to receive the injuries complained of in the action.

It appears that the Wabash had apparatus with which to shorten the hawser from the Brooks. The hawser from the tug ran back to the Brooks, which had no means of shortening the hawser between her and the Wabash, and the hawser of the Wabash extended to the Arundel, which also had no means of shortening this hawser. The Brooks and the Arundel were shallow barges, while the Wabash was a converted bark and drew 22 or 23 feet loaded.

The testimony shows plainly that the time consumed by the Wabash, either in shortening her own hawser to the Arundel or in shortening the hawser between the Brooks and the Wabash, was considerably more than was required by the Defiance in shortening the hawser to the Clara Brooks. The Defiance, observing that the tide was setting the boats over towards Flynn's Knoll, blew a signal to the Wabash to make fast, with the intention of towing the boats up the channel and out of danger to a point where the shortening could be more safely accomplished. This signal was not obeyed or noticed by the Wabash, and after several minutes another was blown, but by this time the Wabash was aground.

There is a conflict between the witnesses as to whether the maneuver of shortening the hawsers should have been attempted at Flynn's Knoll. It appears that it is ordinarily done outside of the Hook, or

else further up toward the Narrows. But the testimony does not fix the entire fault on the part of the Defiance. Apparently the Wabash met with no difficulty in shortening the hawsers in question. Nor was there any reason why she could not make her hawser fast in the space of one or two minutes. She did not attempt anything for which she was not equipped, and no reason has been shown why she did not make the hawser fast and allow the Defiance to proceed with the tow when the signal was given. The master of the Arundel was seated on his vessel watching the operation, and testifies that the Wabash paid no attention to the signal to make fast. Other witnesses corroborate the statement that the Wabash paid no attention to the signals from the Defiance.

It is impossible to hold that the libelant sustained the burden of proof, so as to show that the fault for the injury rested entirely upon the tug. On the contrary, it would appear that the master of the Wabash was also at fault, and the failure of the libelant to allege, prior to the taking of testimony, the same faults now urged by him, must be traced to the same source, viz. that the captain of the Wabash failed to appreciate or understand the dangerous situation, and did not pay attention to the Defiance until he had completed the shortening of his own hawser.

But the Defiance miscalculated the tide, the room available for the maneuver attempted, and the draft of the Wabash. The captain of the Defiance evidently thought he might escape grounding, even when he saw the Wabash drifting, for he delayed some 10 minutes before giving the second signal to make fast, and during this time he was waiting for a tow coming down the bay to pass across his bow. He then started ahead, and found the Wabash had become fast.

On the whole case, both the Defiance and the Wabash were at fault, and responsibility must be divided. The libelant may have half damages and one-half costs.